UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

ANTHONY RUCANO,

                         Plaintiff,

         v.                                          9:16-CV-0438
                                                     (GLS/ATB)

CARL J. KOENIGSMANN et. al.,

                         Defendants.

─────────────────────────────────

APPEARANCES:

ANTHONY RUCANO
11-A-0528
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

GARY L. SHARPE
Senior United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

       The Clerk has sent to the Court for review a pro se civil rights complaint filed by

plaintiff Anthony Rucano pursuant to 42 U.S.C. § 1983 ("Section 1983").  Dkt. No. 1

("Compl.").  Plaintiff has not paid the statutory filing fee and seeks to proceed in forma

pauperis.[1]  Dkt. No. 5 ("IFP Application").

─────────────────────

       [1] On April 28, 2016, the Court administratively closed this case due to plaintiff's failure to submit a
complete IFP Application.  Dkt. No. 4.  On May 9, 2016, plaintiff submitted a complete IFP Application.  Dkt. No.
5.

## II.    IFP APPLICATION[2]

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York.  Plaintiff's IFP application (Dkt. No. 5) is granted.

## III.    INITIAL SCREENING

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil

---

[2] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records (PACER) Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must

3

accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Thus, a pleading that contains only allegations which "are so vague as to fail to give the

defendants adequate notice of the claims against them" is subject to dismissal.  *Sheehy v.*

*Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.    Summary of the Complaint[4]

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of

action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws' of the United States."  *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp.

537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)

(quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-

0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is

the vehicle by which individuals may seek redress for alleged violations of their constitutional

rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a

procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,*

13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in

plaintiff's complaint with the utmost leniency.  *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521

(1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than

---

[4] The complaint contains twenty-seven pages of exhibits.  *See* Dkt. No. 1-1.  The Court will consider the complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (holding that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

formal pleadings drafted by lawyers.").

Plaintiff, a prison inmate currently held at Upstate Correctional Facility ("Upstate C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").[5]  *See generally* Compl. The incidents that form the foundation for this action occurred while plaintiff was confined at Clinton Correctional Facility ("Clinton C.F.").  *See id.* at 2.

## A.    Dental Treatment

In June 2012, plaintiff was diagnosed with advanced adult chronic periodontal disease. Dkt. No. 1-1 at 27; Compl. at 9.  On March 3, 2015, plaintiff was examined by Dr. Kullman ("Kullman").[6]  Compl. at 6.  Kullman recommended "periodontal root planing [sic] and scaling" and a restoration for "tooth #16."  *Id*.  Kullman did not treat plaintiff during the visit but indicated that he would make an appointment for plaintiff.  *Id*.  On April 2, 2015, plaintiff submitted a sick call request for a dental appointment to treat a cavity and extract a "cracked" tooth.  *Id*.  Plaintiff noted that it had been a month since he saw Kullman and his cavity was causing him pain. Dkt. No. 1-1 at 17.

On May 8, 2015, plaintiff was examined by defendant Dr. Excelsa Serabian ("Serabian").  Compl. at 6.  Plaintiff explained that he was experiencing a great deal of pain but Serabian refused to treat plaintiff due to "heavy plaque and calculus" and "inflamed

---

[5]   On January 9, 2012, plaintiff filed a complaint in this district alleging that he received inadequate dental care at Clinton C.F. beginning in February 2011.  *See Rucano v. Koenigsmann*, No. 9:12-CV-0035 (MAD/RFT) (Dkt. No. 1).  The complaint was filed against DOCCS employees at Clinton C.F. including Carl J. Koenigsmann and Mary D'Silva.  *Id*.  On March 26, 2015, the parties entered into a Stipulation and Order of Discontinuance Pursuant to Rule 41(a) ("Stipulation").  *See* Dkt. No. 108.  The Stipulation released defendants from all claims related to "dental problems" existing on or before December 31, 2014.  *See id.* at 2.

[6]   Kullman is not a defendant herein.

gingiva."  Compl. at 6.

On July 13, 2015, plaintiff submitted a sick call request related to a cracked tooth and cavities.  Compl. at 6.  As a result of a four month delay, plaintiff experienced daily pain.  Dkt. No. 1-1 at 20.

On July 13, 2015, plaintiff filed a grievance (#CL-67245-15) claiming that he had been waiting for one year to have a cracked tooth extracted.  Dkt. No. 1-1 at 2.  Plaintiff explained that the "real reason" Serabian would not treat him was because she was "working alone" and "very busy".  Id.; Compl. at 7.  As a result of the delay, plaintiff incurred another cavity and suffered daily pain and difficulty eating.  Dkt. No. 1-1 at 2.  Plaintiff asked for expedited dental treatment to prevent the loss of his teeth.  Id.

On July 21, 2015, at approximately 6:30 P.M., plaintiff was treated at the clinic for "excruciating pain."  Compl. at 7.  Plaintiff receive Ibuprofen and was told to sign up for "emergency dental" in the morning.  Id.  On July 22, 2015, after waiting three hours, plaintiff was examined by defendant Dr. Edward Marra ("Marra").  Id.  Marra took x-rays and extracted "tooth #18."  Id.  When plaintiff asked to see the tooth, he noticed a "sizeable" part of his gum was attached to the tooth but no "actual decay" on the tooth.  Compl. at 7.  Marra told plaintiff that the gum was infected.  Id.  When plaintiff asked for an antibiotic to treat the infection, Marra advised that it was not necessary because the tooth was extracted.  Id.  At 3:00 p.m., plaintiff experienced pain.  Id. at 8.  Over the next six hours, plaintiff's mouth swelled and the pain increased.  Compl. at 8.

On July 23, 2015, plaintiff returned to the dental clinic for an emergency appointment.  Compl. at 8.  Serabian examined plaintiff and prescribed antibiotics for his infection.  Id.  In

three days, the pain and swelling subsided.  *Id*.

On September 11, 2015, Serabian performed a full mouth debridement (sub-gingival scaling) in the upper and lower right quadrants.  Dkt. No. 1-1 at 27.

On November 4, 2015, plaintiff sent a Request for Interview or Information to defendant Vonda Johnson ("Johnson"), the Facility Health Services Director.  Compl. at 8; Dkt. No. 1-1 at 23.  Plaintiff indicated that he needed dental treatment for constant pain in the area where the tooth was extracted.  *Id*.  Plaintiff advised that "last time," he was in pain for over one week and pleaded with Johnson not to "subject [him] to this unnecessary pain again."  Dkt. No. 1-1 at 23.  On the same day, plaintiff submitted a sick call form asking for a dental appointment for multiple cavities on the right side of his mouth and "root scaling" that was incomplete because it was "done over 3 months ago, [and] not completed on left side." *Id*. at 25; Compl. at 9.

On November 25, 2015, Marra treated tooth #16 with "a medicated filling" after excavating "deep decay."  Compl. at 9.  Marra also noted that tooth #14 was decayed and should be treated at plaintiff's next visit.  *Id*.

On December 12, 2015, defendant Superintendent Michael Kirkpatrick ("Kirkpatrick") issued a response denying the grievance related to plaintiff's dental needs.  Dkt. No. 1-1 at 4. Kirkpatrick noted that plaintiff was treated in May 2015 and July 2015 and was "on the list for more dental treatments."  *Id*.

Plaintiff was transferred to Upstate Correctional Facility ("Upstate C.F.").  Compl. at 9. On March 29, 2016, plaintiff wrote to the Dental Department at Upstate C.F. regarding his recent dental treatment.  Compl. at 9; Dkt. No. 1-1 at 27.  Plaintiff stated that in March 2015, Kullman recommended debridement however, the procedure was not performed until six

7

months later.  Dkt. No. 1-1 at 27.  Plaintiff also stated that he suffered from a cracked tooth, for over one year, that required extraction.  Compl. at 9.

## B.    Prison Rape Elimination Act (PREA) Video

On August 19, 2015, at approximately 8:00 A.M., defendant Officer Ramirez ("Ramirez") directed  all inmates to the gym to watch a PREA video.  Compl. at 10.  Plaintiff explained to Ramirez that he did not want to view the video but Ramirez told plaintiff that attendance was mandatory, and if he did not comply, he would receive a misbehavior report.  *Id*.  When plaintiff arrived at the gym, he advised Mr. Kowalowski and his counselor, ORC Rankin, that he was not given the opportunity to sign a form that would have excused plaintiff from viewing the video.[7]  *Id*.  Plaintiff was told that he had no choice and to "sit down and get it over with."  *Id*.  Plaintiff was forced to "relive traumatic feelings" of his past sexual abuse.  Compl. at 10.  Plaintiff immediately advised Ramirez that he needed to speak with "mental health."  *Id*.  Ramirez denied plaintiff's request and directed plaintiff to return to his cell.  *Id*.

On August 20, 2015, at approximately 1:00 P.M., a sergeant "came to [plaintiff]" and told him that if he went to Mental Health, he would be placed in a room for seventy-two hours without clothes.  Compl. at 11. Under those conditions, plaintiff declined to go.  *Id*.  Plaintiff sent a letter to the PREA Supervisor in Albany regarding the incident.  *Id*.  On August 21, 2015, plaintiff spoke with his "mental health provider" about the events that transpired on August 19, 2015.  Compl. at 11.

On September 2, 2015, plaintiff filed a grievance (#CL-6747-15) regarding the events surrounding the video.  Compl. at 11; Dkt. No. 1-1 at 7.  The Inmate Grievance Review

---

[7] Kowalowski and Rankin are not defendants herein.

8

Committee (IGRC) issued a response denying the grievance noting that all inmates are required to view the PREA orientation film. Dkt. No. 1-1 at 8, 10. On September 25, 2015, plaintiff appealed the IGRC response to Kirkpatrick. *Id*. On October 6, 2015, Kirkpatrick concurred with the IGRC. *Id*. at 9. On October 9, 2015, plaintiff appealed the decision to CORC claiming that he was denied the opportunity to speak with mental health after he was compelled to watch the video. Dkt. No. 1-1 at 9. On December 16, 2015, CORC found plaintiff received appropriate access to OMH services. *Id*. at 10.

Construed liberally, the complaint contains the following claims: (1) Serabian, Marra, and Ramirez violated plaintiff's Eighth Amendment rights; (2) Ramirez violated plaintiff's constitutional rights when he failed to investigate, threatened plaintiff, and violated DOCCS procedures; and (3) supervisory claims against Kirkpatrick, Johnson, Chief Medical Officer, Carl J. Koenigsmann ("Koenigsmann"), Director of Correctional Dental Services, Mary D'Silva ("D'Silva"), and PREA Supervisor Jane Doe. *See* Compl., *generally*.

## V. ANALYSIS

## A. Eighth Amendment - Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference has two necessary components, one objective and the other subjective. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### 1. Claims Against Serabian and Marra

The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a

condition of urgency, one that may produce death, degeneration, or extreme pain exists."
*Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553)
(internal quotation marks omitted). The standard to assess the seriousness of a prisoner's
medical condition includes consideration of "(1) whether a reasonable doctor or patient would
perceive the medical need in question as important and worthy of comment or treatment, (2)
whether the medical condition significantly affects daily activities, and (3) the existence of
chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citation and
internal quotation marks omitted). The Second Circuit has recognized that dental injuries
may require unique attention due to the likelihood of continuing pain and discomfort,
however, "not all claims regarding improper dental care will be constitutionally cognizable."
*Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (denying the defendants' motion to
dismiss as plaintiff alleged that, as the result of the defendants' actions, he suffered extreme
pain, his teeth deteriorated, and he was unable to eat properly) (citing *Boyd v. Knox*, 47 F.3d
966, 969 (8th Cir.1995) (finding that a three-week delay in dental treatment aggravated
problem)).

     At this juncture, plaintiff has adequately plead that he suffered from a serious medical
condition. *See Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (reasoning that a tooth
condition left untreated may produce agony and require more invasive treatment such as
extraction); *see also Rucano v. Koenigsmann*, No. 9:12-CV-0035 (MAD/RFT), 2014 WL
1292281, at *10 (N.D.N.Y. March 31, 2014) (finding that the plaintiff's periodontal disease
was a serious medical condition).

     The subjective analysis of the Eighth Amendment test rests on whether Serabian and
Marra acted with a culpable state of mind. Under the subjective element, medical

mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.' "  *Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553).  "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  To assert a claim for deliberate indifference, an inmate must allege that:  (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702.  The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U .S. at 835.  A delay in providing dental treatment may constitute deliberate indifference.  *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir. 1989).  "[A] prisoner can state a claim of deliberate medical indifference under section 1983 if the delay was deliberate and that it caused him to suffer unnecessary and wanton infliction of pain."  *Hayes v. Charles*, No. 10-CV-0380, 2013 WL 4718497, at *5 (W.D.N.Y. Sept. 3, 2013) (citations and internal quotations omitted).

Plaintiff alleges that he suffered from a cracked tooth for over one year.  Dkt. No. 1-1 at 27.  Plaintiff asserts that Serabian failed to provide necessary treatment in May 2015, delayed performing debridement for four months, and delayed the "restoration of [plaintiff's] teeth."  *See* Compl. at 20-21.  Plaintiff also contends that Marra failed to treat his infection with anti-biotics resulting in serious pain.  *See id.* at 23.  Plaintiff contends that Serabian and Marra based their medical decisions upon "non-medical factors."  *See id.* at 22, 23.

The Court finds that plaintiff's Eighth Amendment claims against Serabian and Marra

11

survive sua sponte review and require a response. *See Harrison*, 219 F.3d at 138 (holding that one-year delay in dental treatment may constitute deliberate indifference).  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2.    Claims Against Ramirez

Plaintiff claims that Ramirez violated his Eighth Amendment rights when he refused to "immediately" allow plaintiff to consult with a mental health provider concerning his "feelings of sexual abuse" as a result of being forced to watch the PREA video.  *See* Compl. at 26.

With regard to the objective analysis, the complaint lacks any facts to plausibly suggest that plaintiff suffered from a serious medical need related to his mental health. Plaintiff's conclusory allegations related to "feelings" and a "traumatic experience" do not demonstrate that he suffered from an objectively serious medical need.  Even assuming plaintiff suffered from mental impairments that constitute a serious medical need, plaintiff has not plead facts in support of the subjective analysis.  Ramirez was employed as a Corrections Officer.  *See* Compl. at 5.  "Non-medical personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to attendant prison personnel." *Zimmerman v. Burge*, No. 9:06-CV-0176 GLS/GHL, 2009 WL 9054936, at *7 (N.D.N.Y. Apr. 20, 2009), *report and recommendation adopted*, No. 9:06-CV-0176 (GLS/GHL), 2009 WL 3111429 (N.D.N.Y. Sept. 24, 2009) (citation omitted).

Here, plaintiff claims that Ramirez ignored his request on August 19, 2015, but concedes that he spoke with a sergeant, the next day, with respect to his need for a mental health consult.  These facts do not suggest that Ramirez intentionally delayed, denied or

interfered with plaintiff's request for treatment.  Moreover, plaintiff consulted with someone

from mental health on August 21, 2015, two days after the precipitating event.  *See* Compl.

at 11.  Plaintiff does not claim that he suffered any adverse effects as a result of the two-day

delay between his request for mental health treatment and his consult.  *See Swift v. Twedell*,

582 F.Supp.2d 437, 445 (W.D.N.Y. 2008).

Accordingly, plaintiff's Eighth Amendment claims against Ramirez are dismissed

pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim

upon which relief may be granted.

**B.      Remaining Claims Against Ramirez**

Plaintiff also alleges that Ramirez failed to sufficiently "investigate enough" to make an

"informed decision" when he subjected plaintiff to a mandatory viewing of the PREA video.

*See* Compl. at 25.  Plaintiff contends that Ramirez acted in a "coercing and threatening

manner" and violated DOCCS Directives.  *See id.* at 25, 26.

**1.      Failure to Investigate**

To the extent that plaintiff attempts to assert a constitutional claim of "failure to

investigate," the law is clear that inmates do not enjoy a constitutional right to an investigation

of any kind by government officials.  *Bernstein v. New York*, 591 F.Supp.2d 448, 460

(S.D.N.Y. 2008) (collecting cases); *DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196

(1989) ("[T]he Due Process Clause generally confers no affirmative right to governmental

aid, even where that aid may be necessary to secure life, liberty, or property interests of

which the government itself may not deprive the individual."); *Pine v. Seally*, No.

9:09-CV-1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("[T]he law is . . . clear that

inmates do not enjoy a constitutional right to an investigation of any kind by government

officials.") (citing *Bernstein*, 591 F.Supp.2d at 460).

Accordingly, plaintiff's claim that Ramirez did not investigate is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2.    Threats

Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Williams v. Dubray*, 557 F. App'x 84, 86 (2d Cir. 2014) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Hendricks v. Boltja*, 20 F. App'x 34, 36 (2d Cir. 2001) (holding that "verbal harassment was not actionable" in case where officer, inter alia, told inmate to "get [his] black ass out of the library" and threatened to "smash [his] head open"). Threats made to an inmate, without more, do not rise to the level of a constitutional violation. *Thaddeus-X v. Blatter*, 175 F.3d 378, 489 (6th Cir. 1999). To the extent that plaintiff alleges, without more, that Ramirez threatened him, he has failed to state a claim for relief pursuant to Section 1983.

### 3.    Violations of DOCCS Directives

Plaintiff claims that Ramirez violated DOCCS Directives. *See* Compl. at 26. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding that the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim). "A violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state

law does not itself violate the Constitution and is not alone actionable under § 1983."); *Fluent v. Salamanca Indian Lease Auth*., 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles). Failure to follow a DOCCS Directive does not give rise to a § 1983 claim. These claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See McAllister v. Call*, No. 9:10-CV-0610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) ("[a] section 1983 claim is not the appropriate forum in which to seek review of a violation of unspecified DOCCS rules, regulations and procedures.").

## C.    Personal Involvement and Supervisory Liability

Plaintiff asserts supervisory claims against Kirkpatrick, Johnson, Koenigsmann, D'Silva, and Jane Doe. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501.  In other words, supervisory officials may not be held liable

merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.

1996).  Rather, supervisory personnel may be considered "personally involved" only if they

(1) directly participated in the alleged constitutional violation, (2) failed to remedy that

violation after learning of it through a report or appeal, (3) created, or allowed to continue, a

policy or custom under which the violation occurred, (4) had been grossly negligent in

managing subordinates who caused the violation, or (5) exhibited deliberate indifference to

the rights of inmates by failing to act on information indicating that the violation was

occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781

F.2d 319, 323-24 (2d Cir. 1986)).

### 1.  Kirkpatrick

Plaintiff contends that Kirkpatrick had notice of plaintiff's dental issues through the

grievance process.  *See* Compl. at 18.  "[C]ourts in this circuit have held that personal

involvement may be found where a supervisor receives, reviews, and responds to a plaintiff's

grievance." *Lewis v. Wallace*, No. 9:11-CV-0867 (DNH/DEP), 2013 WL 1566557, at *5

(N.D.N.Y. Feb. 22, 2013) (collecting cases) *report and recommendation adopted*, No.

9:11-CV-0867 DNH/DEP, 2013 WL 1566555 (N.D.N.Y. Apr. 12, 2013).  At this juncture, the

Court finds that plaintiff's supervisory claims against Kirkpatrick survive sua sponte review

and require a response.  In so ruling, the Court expresses no opinion as to whether this claim

can withstand a properly filed motion to dismiss or for summary judgment.

### 2.  Johnson

Construed liberally, plaintiff also claims that Johnson was on notice of the alleged

constitutional violations related to his dental needs through his November 2015 complaint.

Dkt. No. 1-1 at 23.  The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement where the plaintiff may allege that an official failed to respond to a letter of complaint.  *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (holding that a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement).  Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's supervisory claims against Johnson survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

### 3.    Koenigsmann and D'Silva

Plaintiff claims that Koenigsmann promulgated policies for the Division of Health Services (DHS).  *See* Compl. at 13.  Plaintiff contends that DHS issued a Health Services Policy Manual ("HSPM") which provided for a Prison Quality Improvement Program (QIP) and Quality Improvement Committee (QIC).  *See id.* at 13-14.  These programs were designed to monitor and improve the quality of health care provided in inmates.  *See id.* Plaintiff claims that Koenigsmann failed to properly implement these programs and supervise his staff.  *See id.* at 14.  Plaintiff claims that D'Silva failed to comply with HSPM policy, "understaffed" the dental clinic at Clinton C.F., and failed to supervise her staff.  *See* Compl. at 16-17.

Plaintiff's claim that Koenigsmann and D'Silva were aware of the alleged constitutional deprivations through their administration over the HSPM, QIP, and QIC are speculative.  The complaint lacks any facts suggesting how these programs, policies, or committees related to

plaintiff's medical care.

With respect to claims regarding failure to supervise, the complaint lacks any facts suggesting how Koenigsmann and D'Silva were on notice that any subordinate was engaged in unconstitutional behavior. *See Poe v. Leonard*, 282 F.3d 123, 141 (2d Cir. 2002). Plaintiff does not allege that he wrote, complained, or spoke to Koenigsmann or D'Silva, at any time, regarding his dental issues. Indeed, other than identifying Koenigsmann and D'Silva in the caption and as parties to the action, the body of the complaint does not contain any facts related to any specific allegations of wrongdoing by these defendants. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (finding that plaintiff failed to plead personal involvement in any of constitutional deprivation where the defendant was not mentioned or referenced in the body of the complaint).

Accordingly, plaintiff's claims against Koenigsmann and D'Silva are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4.    Jane Doe, PREA Supervisor

Plaintiff alleges that Jane Doe failed to implement safeguards that would excuse certain members of the prison population from watching the PREA video. *See* Compl. at 24. Plaintiff refers generally to a letter sent to the PREA Supervisor in Albany but fails to plead facts establishing when/where the letter was sent or by what means it was forwarded. While cognizant of *Grullon*, the Court finds that, as presently plead, plaintiff has failed to establish

that Jane Doe was personally involved in any constitutional deprivation.  Without more, the

allegations are not enough to allege personal involvement in any constitutional deprivation.

Moreover, absent an underlying constitutional violation by a subordinate, there can be no

supervisory liability.  *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003); *see Elek v. Inc.*

*Vill. of Monroe*, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition

that "because plaintiff has not established any underlying constitutional violation, she cannot

state a claim for 1983 supervisory liability").

Accordingly, plaintiff's claims against Jane Doe are dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may

be granted.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 5) is **GRANTED**.[8]  The Clerk of the

Court shall provide the Superintendent of the facility that plaintiff has designated as his

current location with a copy of plaintiff's authorization form (Dkt. No. 3) and notify officials that

plaintiff has filed this action and are required to pay the Northern District of New York the

entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization

form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to

28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which

---

[8]  Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

relief may be granted: (1) Eighth Amendment claims against Ramirez; (2) claims that Ramirez failed to investigate in violation of plaintiff's constitutional rights; (3) claims that Ramirez threatened plaintiff; (4) claims that Ramirez violated DOCCS Directives; (5) claims against Koenigsmann, D'Silva, and Jane Doe;[9] and it is further

> **ORDERED** that Ramirez, Koenigsmann, D'Silva, and Jane Doe are **DISMISSED** as defendants in this action; and it is further

> **ORDERED** that the Clerk shall issue summons and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the summons and complaint to the Office of the New York Attorney General, together with a copy of this Decision and Order; and it is further

> **ORDERED** that a response to the complaint be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

> **ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be**

---

[9] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

May 23, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge